**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 10, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP414**

Cir. Ct. No. 2020TP257

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO **F. E.**, A PERSON UNDER THE AGE OF **18**:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

B. M.,

      RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1 WHITE, C.J.[1] B.M. appeals from the order denying her motion to withdraw her no-contest plea to the grounds of the petition to terminate parental rights to her son, F.E., after an evidentiary hearing.[2] Upon review, we conclude that B.M. should not be permitted to withdraw her plea because the totality of the record establishes by clear and convincing evidence that B.M.'s plea was entered knowingly, intelligently, and voluntarily. We affirm.

## BACKGROUND

¶2 The circuit court terminated B.M.'s parental rights to her son, F.E., in January 2023. She moved to withdraw her no-contest plea to the grounds in August 2023. The postdisposition court denied her request without a hearing later that month. B.M. appealed, and this court concluded that she had made a prima facie case for plea withdrawal and directed the postdisposition court to hold an evidentiary hearing on her claim. *State v. B.M.*, No. 2023AP1137, unpublished slip op. (WI App Nov. 14, 2023) (discussing the factual background of B.M.'s first appeal).

¶3 B.M.'s claim was based on the circuit court misinforming her of the statutory standard for the disposition of the TPR petition. The court told B.M. that the State would be forced "to prove to a reasonable certainty that adoption serves the best interest of [her] child" and if the State did not meet its burden, then the TPR "petition would have to be dismissed and a different alternative would have

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] We refer to the family in this matter by initials to maintain confidentiality and privacy, in accordance with WIS. STAT. RULE 809.19(1)(g).

to be pursued." As noted in the previous appeal, the circuit court explained the burden and standard in TPR proceedings in multiple ways, including using the term "best interest[s]" five times in the plea hearing.

¶4 At the remanded evidentiary hearing, it was undisputed that a colloquy defect had occurred and B.M. made her prima facie case for plea withdrawal. The State clarified that its burden at this hearing was to prove by clear and convincing evidence that B.M.'s no-contest plea was knowing, intelligent, and voluntary, despite the colloquy defect.

¶5 B.M. testified that she was the mother of five children, but did not have legal rights to any of them. Three of the children's cases were resolved together, with a jury finding the grounds existed for the TPR petition in April 2021, and the court ordering termination of her parental rights as the disposition of the petition in September 2021. B.M. acknowledged that she had experienced a full TPR trial and disposition for those three children before she elected to enter the no-contest plea in F.E.'s case.

¶6 B.M. testified that she remembered and answered truthfully in the plea colloquy with the circuit court in F.E.'s case. She testified that she believed she understood that she was not giving up her right to fight for what was best for F.E. in the later phase of the TPR action. She recalled that the court said best interest or what was in F.E.'s best interests "a million times" or at least "several times in the court hearing." She testified that she understood on the day of the plea colloquy that there would be another hearing and the court would make a decision about that was best for F.E.

¶7 B.M. testified that she learned what "burden of proof" meant that day, which she defined as "[e]vidence that needs to be shown"—although she later

amended her statement that she understood what it meant as the appeal filings were made. She stated that while the court offered her a chance to ask questions, she did not understand how the courts or the proceedings worked at the time of the plea colloquy, and that her counsel did not do a good job of explaining it, so she "just went along with it."

¶8    B.M. testified that she did not state a desire to withdraw her plea during the "prove up" hearing on the grounds held six days after she entered her plea. She testified that at the dispositional hearing, she opposed her parental rights being terminated, but she was "okay" with the result.

¶9    When questioned by the guardian ad litem (GAL), B.M. testified that in the TPR proceedings for two of her children, the court gave an involved description of the TPR process, and when a third child's case was joined to action, she told the court she did not need another explanation because she already knew how it worked. She further explained that while she thought she understood how it worked at that point, she now realized she did not understand the process.

¶10    During cross-examination, B.M. testified that she did not understand the legal terminology and lingo used in the TPR proceedings, and that while she went through the process with three of her children, she was still learning during F.E.'s TPR case. She testified that she was confused at times.

¶11    The circuit court then questioned B.M., who confirmed that she remembered the court asking her to raise her hand if she did not understand the language in the courtroom. She recalled the court asking if she felt comfortable and confident about what was happening. She stated that she understood her no-contest plea would give her more time to prove she was a better fit as a parent. She explained that she wanted more time to gather evidence and witnesses to

testify on her behalf so she could "win." She acknowledged that during the dispositional phase, she had the chance to put on her case for what was best for E.F.

¶12 The circuit court denied B.M.'s motion to withdraw her no-contest plea. The court's reasoning included that B.M. told the court she did not want a jury trial, she wanted more time to present evidence of her parental fitness, she knew the term "best interest," she informed the court she understood what was happening, and she did not ask any questions.[3]

¶13 This appeal follows.

## DISCUSSION

¶14 B.M. argues that the State failed to show that her no-contest plea was entered knowingly, intelligently, and voluntarily. She asserts that she believed the circuit court's language that the State would have to prove by clear and convincing evidence that termination was in F.E.'s best interest. The State argues that the B.M.'s testimony at the evidentiary hearing shows that she did understand the process and entered her plea knowingly, intelligently, and voluntarily.

---

[3] The circuit court also explained that while it was an unsettled question of law whether a misstatement of the statutory standard was a substantial defect, it concluded that B.M. got the benefit of the bargain she made because the court found by clear and convincing evidence that the State proved it would be in F.E.'s best interest to terminate her parental rights. As B.M. points out, the State and the GAL did not appeal this court's decision that the misstatement was a substantial defect constituting a prima facie plea colloquy violation; therefore, that question was not before the circuit court in the evidentiary hearing and it is not before this court on appeal. We decline to address arguments from the GAL or, to a lesser extent, from the State, on this issue.

¶15   If a parent enters a plea to the grounds phase of a TPR petition, the circuit court must engage the parent in a colloquy, governed by the requirements of WIS. STAT. § 48.422(7) and due process, to ensure that the plea was entered knowingly, intelligently, and voluntarily. *Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶25, 293 Wis. 2d 530, 716 N.W.2d 845. A parent seeking withdraw a plea based on a court's failure to fulfill a duty in the plea colloquy must make a prima facie case of a violation of statutory duties and that the parent did not understand what should have been explained. *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶6, 314 Wis. 2d 493, 762 N.W.2d 122. If the parent makes the prima facie case, the burden shifts to the State to show by clear and convincing evidence in an evidentiary hearing that the plea was entered knowingly, intelligently, and voluntarily despite the defect in the plea colloquy. *Id.*

¶16   Whether the State has met its burden to prove that a parent's plea on the grounds of a TPR petition was knowing, intelligent, and voluntary is question of constitutional fact. *See State v. Gomolla*, 2024 WI App 13, ¶18, 411 Wis. 2d 239, 4 N.W.3d 610. In our review, "we accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous" and "[w]e independently determine whether those facts demonstrate that the [parent's] plea was knowing, intelligent, and voluntary." *See State v. Hoppe*, 2009 WI 41, ¶ 45, 317 Wis. 2d 161, 765 N.W.2d 794.

¶17   Our examination of the record shows that B.M.'s plea was entered knowingly, intelligently, and voluntarily despite the circuit court's misstatement during the plea colloquy of the statutory standard to be applied in the dispositional phase of the TPR. B.M. testified that when she entered her plea, she knew there would be a second hearing at which the circuit court would decide what was best for F.E. While B.M. contends that she found the legal terminology and lingo in

the hearings confusing, her testimony shows she grasped the essential framework of the TPR proceedings before she entered her plea. She was aware that the circuit court would be making the decision about the outcome of the TPR petition and that the court would consider what was best for F.E.

¶18 Further, the record reflects that B.M. had experienced finalized TPR cases for three of her children including a jury trial and dispositional hearing before she entered her plea in F.E.'s case, that she told the judge in a prior TPR case that she did not need an explanation of the statutory standards because she already understood, and that she declined to ask the court any questions about the language used in the hearing or her understanding of the proceedings. We agree with the circuit court's conclusion that plea withdrawal was not warranted. The court properly determined, based on the entire record and B.M.'s testimony that she entered her plea knowingly, intelligently, and voluntarily. *See Gomolla*, 411 Wis. 2d 239, ¶26.

¶19 B.M. argues that court proceedings can be intimidating and confusing through the use of lingo and legal terminology. Although this may be true, a parent is also obligated to engage in the process and ask questions. *See State v. Brown*, 2006 WI 100, ¶37, 293 Wis. 2d 594, 716 N.W.2d 906 ("[I]f a [parent] does understand the charge and the effects of his [or her] plea, he [or she] should not be permitted to game the system by taking advantage of judicial mistakes."). Here, the record reflects B.M. entered her plea because she wanted additional time to "win." She received additional time. She did not testify that her decision making was influenced by an expectation of a higher burden of proof on the State of clear and convincing evidence. While the circuit court observed that B.M. understood more than she let on, we note that the misstatement about the statutory standard in the dispositional phase would matter more if the parent

considered a burden of proof on the State when entering her plea. B.M.'s testimony does not show that she considered the State's burden.

## CONCLUSION

¶20 For the reasons stated above, we conclude that the State satisfied its burden to show that B.M.'s plea was entered knowingly, intelligently, and voluntarily despite the defect in the plea colloquy. We therefore affirm the order denying her postdisposition motion to withdraw her plea.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.